IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| ISIDRO ALCANTARA-MONTIEL, DOLORES GARCIA-NAJERA, HECTOR HERNANDEZ-HERNANDEZ,  SALVADOR RUBIO-RUBIO, VICTOR VALDEZ-MARTINEZ, and all others similarly situated, | : : : : : : | |
| Plaintiffs, | : : | CIVIL ACT. NO. |
| v. | : : | |
| R & H FARMS, INC.; RANDY H. HIERS JR. and NORADINO RODRIGUEZ, | : : : | _____ |
| Defendants. | | |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

1. Plaintiffs are migrant farmworkers recruited by Defendants in Mexico in 2008, 2009, and 2010 to work for Defendants in and around Lowndes County, Georgia. Plaintiffs file this action on behalf of themselves and other similarly situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia tort and contract law.

2. Plaintiffs and other similarly situated workers left their homes and families, and spent considerable money and effort to obtain work visas and travel to Georgia to work for Defendants.

3. Defendants violated the FLSA by failing to pay each Plaintiff and other similarly situated worker at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek by requiring Plaintiffs and other similarly situated workers to

return a portion of their wages to the field supervisor each week and by failing to reimburse their preemployment expenses as required by law.

4.     By unlawfully requiring workers to return part of their wages, Defendants converted Plaintiffs' and other similarly situated workers' property to their own use.

5.     Defendants breached Plaintiffs' employment contracts by failing to pay Plaintiffs and other similarly situated workers the contractual minimum wage for all hours worked.

6.     Plaintiffs seek their unpaid wages; liquidated damages; actual, incidental, consequential, compensatory damages, and punitive damages; pre- and post-judgment interest, reasonable attorneys' fees and costs, and declaratory and injunctive relief.

## II. JURISDICTION AND VENUE

7.     This Court has jurisdiction of this action pursuant to:

      a.     28 U.S.C. § 1331 (Federal Question);

      b.     29 U.S.C. § 1337 (Interstate Commerce);

      c.     29 U.S.C. § 216(b) (FLSA); and

      d.     28 U.S.C. § 1367 (Supplemental).

8.     This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4, because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

10.     This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES

11.     At all times relevant to this complaint, Plaintiffs were H-2A agricultural guestworkers admitted into the United States to work for Defendants under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0–655.113 (2008); 20 C.F.R. §§ 655.0–655.119 (2009).

12.     Plaintiffs' FLSA consent forms are attached as Exhibit A.

13.     Plaintiffs Dolores Garcia-Najera, Salvador Rubio-Rubio, and Opt-in Plaintiffs Gustavo Martin Alvarez-Chaires, Ernesto Castillo-Cova, Alfredo Adrian Garcia-Simental, Ricardo Gonzalez-Mendoza, Gil Mendoza-Chavez, Armando Rubio-Rubio, and Julio Servin-Carreras worked for Defendants in 2008, 2009, and 2010.

14.     Plaintiffs Isidro Alcantara-Montiel, Hector Hernandez-Hernandez, Victor Valdez-Martinez  and Opt-in Plaintiffs Gelacio Allende-Martinez, Bacilio Escamilla-Hernandez,  Jose Alejandro Lozano-Favela, Hector Manuel Martinez-Gomez, Macario Servin-Torres, Antonio Torres-Clavijo, and Pedro Valdez-Martinez worked for Defendants in 2009 and 2010.

15.     Opt-in Plaintiffs German Baltazar-Lopez, Roque Gonzalez-Trejo, and Homero Loya-Blanco worked for in 2010.

16.      At all times relevant to this action, Defendant R & H Farms, Inc. ("R & H Farms") was and is a corporation in good standing, duly formed under and in accordance with the laws of the State of Georgia. R & H Farms maintains a principal place of business in Lake Park, Georgia.

17.     Defendant R & H Farms may be served with process through its registered agent, Curtis G. Fowler, at 3208 Wildwood Plantation Drive, Valdosta, Georgia 31602.

18.     Defendant Randy H. Hiers Jr. ("Hiers Jr.") is a manager of R & H Farms and may be served with process at 1205 Highway 135 North, Lake Park, Georgia, 31636.

19.     At all times relevant to this action, Defendant Hiers Jr. had the power to hire and fire Plaintiffs and had control over their conditions of work.

20.     Defendant Hiers Jr. is a day to day manager with operational control over R & H Farms.

21.     At all times relevant to this action, Defendant Hiers Jr. was an employer as defined by the FLSA, 29 U.S.C. § 203(d).

22.     At all times relevant to this action, Defendant Hiers Jr. was an employer as defined by the parties' employment contracts. 20 C.F.R. § 655.100(b) (2008); 20 C.F.R. § 655.100(c) (2009).

23.     Defendant Noradino Rodriguez ("Rodriguez") was a supervisor at R & H Farms and may be served with process at 119 Dassie Lane, Lake Park, Georgia 31636-6085.

24.     Defendant Rodriguez was hired by Defendants R & H Farms and Hiers Jr. ("Hiers Defendants") to recruit workers from Mexico and to supervise workers in the planting and harvesting of crops.

25.     At all times relevant to this action, Defendant Rodriguez was an employee and agent of the Hiers Defendants.

26.     Defendant Rodriguez directly supervised Plaintiffs and other similarly situated workers in the fields and was responsible for recording their hours worked.

27.     At all times relevant to this action, Defendant Rodriguez was responsible for distributing paychecks to Plaintiffs and other similarly situated workers at R & H Farms.

28.     All allegations in this Complaint pertaining to the acts or omissions of Defendant Rodriguez were within the scope of his authority as an agent and employee of, and as such are attributable to, the Hiers Defendants.

29.     At all times relevant to this action, Defendant Rodriguez was an employer as defined by the FLSA, 29 U.S.C. § 203(d), and the parties' employment contracts, 20 C.F.R. § 655.100(b) (2008); 20 C.F.R. § 655.100(c) (2009).

30.     At all times relevant to this action, Defendants R & H Farms, Hiers Jr., and Rodriguez were engaged in the harvesting and production of vegetables in Georgia for sale in interstate commerce.

## IV.  THE H-2A PROGRAM

31.     The H-2A program was created by 8 U.S.C. §1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0–655.113 (2008), applicable for Defendants' 2008 season, and  20 C.F.R. §§ 655.0–655.119 (2009), applicable for Defendants' 2009 and 2010 seasons. The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services.

32.     Employers requesting H-2A workers must file a temporary labor certification application with the appropriate U.S. Department of Labor Regional Administrator (under 2008 regulations) or Employment and Training Administration's National Processing Center (under 2009 regulations).  20 C.F.R. §§ 655.101(a)(1) and (b)(1) (2008 and 2009).  The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. §§ 655.102 (2008) and 20 C.F.R. §§ 655.104 (2009), and 20 C.F.R. §§ 653.501 (2008 and 2009) and is used to recruit both foreign H-2A workers and workers throughout the United States. *See* 20 C.F.R. § 655.101(b) (2008) and 20 C.F.R. § 655.102(e)(2) (2009).

33.     The terms and conditions of the job orders here constituted employment contracts between Plaintiffs and other similarly situated workers, and Defendants.

34.     The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.100(b) (2008) and 20 C.F.R. § 655.100(c) (2009).

35.     For all time periods at issue here, the Hiers Defendants' agent for the H-2A process was AgWorks, Inc.

36.     For each H-2A contract, Defendants promised that each worker would earn at least the prevailing rate for the crop activity or at least the adverse effect wage rate (known as the "AEWR"), whichever is higher, for all hours worked in the payroll period. *See* Ex. B at Attachment to ETA 790, § 1(I) ("Rates of Pay"); Ex. C at ETA 790 Continuation, Item 11; Ex. D at ETA 790, Item 16.

37.     The "Adverse Effect Wage Rate," or "AEWR," is the hourly wage or field and livestock workers for the region and is established each year by the U.S. DOL. 20 C.F.R. § 655.107(a) (2008); 20 C.F.R. § 655.108(e) (2009)

38.     The employment contracts promised to pay the applicable AEWR or any higher AEWR the date it was published. Ex. B at Attachment to ETA 790, § 1(I) ("Rates of Pay"); Ex. C at ETA 790 Continuation, Item 11; Ex. D at ETA 790, Item 16.

39.     For the 2008 contracts, the applicable AEWR was $8.53. 73 Fed. Reg. 10288-90 (Feb. 26, 2008).

40.     For the 2009 contract, the applicable AEWR was initially $8.53. 73 Fed. Reg. 10288-90 (Feb. 26, 2008).

41.     A new AEWR of $8.77 was published on May 29, 2009. 74 Fed. Reg. 26016-17 (May 29, 2009).

6

42.     The H-2A program regulations require reimbursement of workers' incoming transportation costs at the 50% point of the contract. 20 C.F.R. § 655.102(b)(5) (2008); 20 C.F.R. § 655.104(h)(1) (2009).

43.     The 2009-2010 H-2A program regulations forbid an employer or its agents from receiving 'kickbacks' from workers.  20 C.F.R. § 655.105(o) (2009).

44.     The 2009-2010 H-2A program regulations require employers to "contractually forbid" any recruiter from "seek[ing] or receiv[ing] payments from perspective employees."  20 C.F.R. § 655.105(p) (2009).

## V.  STATEMENT OF FACTS

45.     In each year relevant to this Complaint, Defendants imported H-2A workers under job order contracts for planting and harvesting assorted vegetables.

46.     For the 2008 season, Defendant R & H Farms filed job order number GA7658058 requesting 60 H-2A workers for the period of March 31, 2008 to November 30, 2008. A copy of this job order is attached as Exhibit B.

47.     Plaintiffs Dolores Garcia-Najera, Salvador Rubio-Rubio, and Opt-in Plaintiffs Gustavo Martin Alvarez-Chaires, Ernesto Castillo-Cova, Alfredo Adrian Garcia-Simental, Ricardo Gonzalez-Mendoza, Gil Mendoza-Chavez, Armando Rubio-Rubio, and Julio Servin-Carreras were employed under the terms of the 2008 job order.

48.     For the 2009 season, Defendant R & H Farms filed job order number GA7754469 requesting 60 H-2A workers for the period of April 20, 2009 to November 20, 2009. A copy of this job order is attached as Exhibit C.

49.     Plaintiffs Isidro Alcantara-Montiel, Dolores Garcia-Najera, Hector Hernandez-Hernandez,  Salvador Rubio-Rubio, Victor Valdez-Martinez and Opt-in Plaintiffs Gelacio

Allende-Martinez, Gustavo Martin Alvarez-Chaires, Ernesto Castillo-Cova, Bacilio Escamilla-Hernandez,  Alfredo Adrian Garcia-Simental, Ricardo Gonzalez-Mendoza, Jose Alejandro Lozano-Favela, Hector Manuel Martinez-Gomez, Gil Mendoza-Chavez, Armando Rubio-Rubio, Julio Servin-Carreras, Macario Servin-Torres, Antonio Torres-Clavijo, and Pedro Valdez-Martinez,  were employed under the terms of the 2009 job order.

50.      For the 2010 season, Defendant R & H filed job order number GA77834053 requesting 54 H-2A workers for the period May 15, 2010 to November 20, 2010. A copy of this job order is attached as Exhibit D.

51.      The 2008, 2009, and 2010 job orders' "Employer's Certification" sections were signed by Randy H. Hiers, Sr. as president of Defendant R & H Farms.

52.      Plaintiffs Isidro Alcantara-Montiel, Dolores Garcia-Najera, Hector Hernandez-Hernandez, Salvador Rubio-Rubio, Victor Valdez-Martinez and Opt-in Plaintiffs  Gelacio Allende-Martinez, Gustavo Martin Alvarez-Chaires, German Baltazar-Lopez, Ernesto Castillo-Cova, Bacilio Escamilla-Hernandez, Alfredo Adrian Garcia-Simental, Ricardo Gonzalez-Mendoza, Roque Gonzalez-Trejo, Homero Loya-Blanco, Jose Alejandro Lozano-Favela, Hector Manuel Martinez-Gomez, Gil Mendoza-Chavez, Armando Rubio-Rubio, Julio Servin-Carreras, Macario Servin-Torres, Antonio Torres-Clavijo, and Pedro Valdez-Martinez, were employed under the terms of the 2010 job order.

53.      Prior to the start of each season, the Hiers Defendants received correspondence from their agent, AgWorks, Inc., explaining a number of their obligations as employers.

54.      The Hiers Defendants directed their agent and employee, Defendant Rodriguez, to recruit, obtain, and hire H-2A workers.

8

55.     Upon information and belief, the Hiers Defendants did not pay Defendant Rodriguez for his recruiting services.

56.     Plaintiffs Victor Valdez-Martinez, and Opt-in Plaintiffs Gil Mendoza-Chavez and Pedro Valdez-Martinez, and other similarly situated workers were required to pay fees to Defendant Rodriguez to secure an offer of employment from the Hiers Defendants.

57.     Plaintiffs Victor Valdez-Martinez, and Opt-in Plaintiffs Gil Mendoza-Chavez and Pedro Valdez-Martinez, and other similarly situated workers paid fees to Defendant Rodriguez of at least $1500.

58.     In addition to the fee paid to Defendant Rodriguez, Plaintiffs and other similarly situated workers incurred various immigration and travel-related expenses to come work for Defendants in Georgia.

59.     For each season at issue in this action, Plaintiffs and other similarly situated workers were required to pay, at their own expense, a visa reciprocity fee ("Banamex") of at least $100.

60.     Plaintiffs and other similarly situated workers were required to purchase, at their own expense, passports necessary to obtain an H-2A visa.

61.     Plaintiffs and other similarly situated workers were required to pay their own travel and subsistence expenses in traveling from their homes in Mexico to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico for the consular interview necessary to obtain an H-2A visa.

62.     Plaintiffs and other similarly situated workers incurred expenses for lodging and subsistence while they waited for their interviews and for the issuance of their visas in Monterrey.

63.     Plaintiffs and other similarly situated workers were required to pay, at their own expense, visa fees, processing fees, and travel expenses from Monterrey, Mexico to Lake Park, Georgia in excess of $200 to Defendants' agents Solstice International in Monterrey, Nuevo Leon, Mexico.

64.     Plaintiffs and other similarly situated workers were required to pay, at their own expense, a $6.00 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the United States.

65.     Plaintiffs and other similarly situated workers were required to pay their own subsistence expenses during their journey from Monterrey, Mexico to Defendant's operations in Georgia.

66.     The expenditures set out in paragraphs 56 through 65 were primarily for the benefit of Defendant within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217 (2010).

67.     The expenditures set out in paragraphs 56 through 65 were made before receipt of Plaintiffs' and other similarly situated workers' first paychecks in each contract period in which they worked.

68.     Defendant failed to reimburse Plaintiffs and other similarly situated workers during the first workweek for the costs described in paragraphs 56 through 65 to the extent that these costs brought Plaintiffs' and other similarly situated workers' first week's wages below the federal minimum wage.

69.     Defendants did not reimburse Plaintiffs and other similarly situated workers at the 50 percent point of Plaintiffs' work period for all inbound transportation to Georgia and subsistence expense not previously reimbursed as required by their employment contracts.

70.    Defendants arranged for Plaintiffs and other similarly situated workers to cash their paychecks at a local gas station under the supervision of Defendant Rodriguez.

71.    One pay period per season, Defendant Rodriguez required each Plaintiff and other similarly situated worker to return $225 from their wages to him.

72.    Plaintiffs and other similarly situated workers returned to Defendant Rodriguez at least $225 of their wages in one pay period per season.

73.    This $225 payment brought Plaintiffs' and other similarly situated workers' compensation below the applicable federal minimum wage for the pay period in which it was made. *See* 29 C.F.R. § 531.35 (2010).

74.    In addition to the $225 partial return of wages, Defendant Rodriguez required that each week $10 of each Plaintiff's and other similarly situated worker's wages to returned to him.

75.    Plaintiffs and other similarly situated workers returned $10 of their wages to Defendant Rodriguez each week in addition to the $225 returned in a one week.

76.    In 2009 and 2010, these payments brought Plaintiffs' and other similarly situated workers' compensation below the applicable federal minimum wage for each pay period. *See* 29 C.F.R. § 531.35 (2010).

77.    The return of wages described in paragraphs 71 through 76 above  were coerced from Plaintiffs and other similarly situated workers under threats of not being rehired the following season.

78.    In all seasons relevant to this action, the return of wages described in paragraphs 71 through 76 above caused Plaintiffs' and other similarly situated workers' wages to fall below the applicable AEWR.

79.     Defendant Rodriguez was acting in the scope of his employment with the Hiers Defendants and in furtherance of their business when he required workers to return part of their wages to him as part of his compensation for supervising for the Hiers Defendants as detailed in paragraphs 71 through 76 above.

80.     Defendants were on notice of their FLSA obligations due to correspondence they received from their agent, AgWorks, Inc.

81.     Defendants knew of or showed reckless disregard for their FLSA obligations by failing to reimburse and by allowing large deductions from Plaintiffs' and other similarly situated workers' pay.

82.     Defendants acted in bad faith by willfully depriving Plaintiffs and other similarly situated workers of their rightful property in the form of earned wages.

## COUNT I

## FAIR LABOR STANDARDS ACT

83.     Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 82 above by reference.

84.     Plaintiffs file this Count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. § 216(b).

85.     As detailed in paragraphs 56 through 76 above, Defendants failed to pay Plaintiffs and others similarly situated at least the required average minimum hourly wage for every compensable hour of work performed in a workweek, as required by 29 U.S.C. § 206(a).

86.     The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 56 through 65 above, which Plaintiffs incurred primarily for the benefit of Defendants prior to Plaintiffs' first week of work. When these

expenses were subtracted from Plaintiffs' first week pay, as required by law, Plaintiffs' and other similarly situated workers' earnings fell below the required average minimum hourly wage for that pay period.

87.    The violations set forth in this Count resulted, in part, from Defendants requiring Plaintiffs and other similarly situated workers to return $225 of one pay period's wages per season as detailed in paragraphs 71 through 73 above.

88.    The violations set forth in this Count resulted, in part, from Defendants requiring Plaintiffs and other similarly situated workers to return a $10 portion of their wages to Defendants each week, as detailed in paragraphs 74 through 76 above.

89.    As a result of Defendant's violations of the FLSA set forth in this Count, each Plaintiff and other similarly situated worker is entitled to recover the amount of his unpaid minimum wages and an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b), as well as the reasonable attorneys' fees and litigation expenses of their counsel of record pursuant to 29 U.S.C. § 216(b).

90.    Defendants' violations set out in this Count were willful within the meaning of FLSA.

**COUNT II**

**BREACH OF CONTRACT**

91.    Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 82 above by reference.

92.    This Count sets for a claim by Plaintiffs and other similarly situated workers for damages for Defendants' breach of the "rate of pay" and 50 percent reimbursement provisions of the Plaintiffs' H-2A employment contracts, as described in paragraphs 56 through 76 above.

93.     Defendants offered employment on the terms and conditions set out in the 2008, 2009, and 2010 job orders as described in paragraphs 31 through 52 above. Exs. B, C, and D.

94.     Plaintiffs and others similarly situated accepted Defendants' offer.

95.     Defendants breached Plaintiffs' H-2A employment contracts by failing to pay the Plaintiffs and other similarly situated workers the applicable AEWR as described in paragraphs 56 through 76 above.

96.     Defendants breached Plaintiffs' H-2A employment contracts by failing to fully reimburse Plaintiffs and other similarly situated workers for their inbound transportation costs as described in paragraph 69 above.

97.     As a direct consequence of Defendants' breach, Plaintiffs and others similarly situated suffered economic injury.

98.     Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and prejudgment interest.

## Count III

### CONVERSION

99.     Plaintiffs incorporate paragraphs 1 through 82 by reference.

100.    This Count sets forth a claim for damages arising from Defendants' intentional conversion of wages belonging to Plaintiffs and others similarly situated.

101.    Each pay period, Plaintiffs and others similarly situated were in rightful possession of their paid wages.

102.    Once per season, Defendant Rodriguez converted $225 of the wages of each Plaintiff and other similarly situated worker to his own use.

103.    Each week, Defendant Rodriguez converted $10 of the wages of each Plaintiff and other similarly situated worker to his own use.

104.    The Hiers Defendants are liable for the acts of Defendant Rodriguez because he was acting within the scope of his employment with the Hiers Defendants and in furtherance of their business.

105.    As a result of Defendants' conversion, Plaintiffs and others similarly situated suffered actual damages, including the amounts of the seasonal and weekly partial return of wages and prejudgment interest.

106.    Defendants' conversion was knowing, willful, and malicious, and shows wantonness, oppression, or such an entire want of care as to indicate conscious indifference to the consequences of their acts. Plaintiffs and others similarly situated are therefore entitled to recover punitive damages from Defendants in amounts to be determined by the enlightened conscience of the fact finder. O.C.G.A. § 51-12-5; 51-12-5.1(b).

107.    Defendants acted in bad faith by committing intentional torts and therefore Plaintiffs are entitled to their reasonable attorneys' fees and costs in pursuing this action.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)    Under Count I:

1.    Declare that Defendants have willfully violated the FLSA as specified above in paragraphs 80 through 82 above;

2.      Grant judgment against Defendants and in favor of each Plaintiff in the amount of his respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

3.      Award Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b)    Under Count II:

1.      Declare that Defendants have breached their employment contracts with Plaintiffs as specified in paragraphs 56 through 76 above;

2.      Grant judgment against Defendants and in favor of each Plaintiff, in the amount of Plaintiffs' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(d)    Under Count III:

1.      Grant judgment against Defendants and in favor of each Plaintiff in the amount of Plaintiffs' actual and punitive damages;

2.      Award Plaintiffs their attorneys' fees pursuant to O.C.G.A. § 13-6-11.

(c)    Award Plaintiffs pre- and post-judgment interest as allowed by law;

(d)    Cast all costs upon Defendants; and

(e)    Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this 11th day of May, 2011,

/s/ Leah Lotto
Leah Lotto
Georgia Bar No. 940599
Dawson Morton
Georgia Bar No. 525985

Rebecca Miller
Georgia Bar No. 489898
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

*Attorneys for Plaintiffs*